UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HASIBE RASHID,

Plaintiff,

-against-

THE CITY OF NEW YORK, and CAMILLE JOSEPH VARLACK.

Defendants.

**VERIFIED COMPLAINT**

Plaintiff Hasibe Rashid ("Plaintiff Rashid"), by and through her attorney, Houston A. Stokes, Esq. of STOKES LAW PLLC, brings this Verified Complaint against Defendant The City of New York ("Defendant NYC") and Defendant Camille Joseph Varlack ("Defendant Varlack") (collectively hereinafter "Defendants") as follows.

## PRELIMINARY STATEMENT

1. Plaintiff Rashid brings this action against Defendant NYC, her employer, and Defendant Varlack, her former supervisor, for national origin discrimination, religious discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

2. Plaintiff Rashid is a Muslim woman of Palestinian national origin who has dedicated her professional career to working for Defendant NYC from May 2013 to the present.

3. In September 2022, Defendant NYC promoted Plaintiff Rashid to a prestigious position as Special Assistant to the Chief of Staff to then New York City Mayor Eric Adams ("NYC Mayor Adams"). Plaintiff Rashid excelled as the Special Assistant to NYC Mayor

Adams' Chief of Staff and Defendants repeatedly praised Plaintiff Rashid for her exceptionally strong performance.

4.    In May 2023, Defendant Varlack, who was then serving as NYC Mayor Adams' Chief of Staff and Plaintiff Rashid's direct supervisor, told Plaintiff Rashid that she was an incredible asset and announced that Plaintiff Rashid would be promoted to a more substantial policy focused position.  Plaintiff Rashid was thrilled with this significant and well-earned promotion.

5.    Defendant Varlack created a new policy focused position specifically for Plaintiff Rashid and on October 20, 2023 Defendant Varlack's office formally entered Plaintiff Rashid's approved promotion into the NYC Mayor's Office Manager online system that controls personnel changes.

6.    On October 25, 2023, all Muslim City Hall employees (including Plaintiff Rashid) met with NYC Mayor Adams to directly complain of ongoing anti-Muslim discrimination and harassment they were experiencing in their City Hall workplace in the aftermath of Hamas attacking Israel on October 7, 2023 and Israel militarily retaliating.

7.    During this meeting, Plaintiff Rashid notified Defendant NYC <u>for the first time</u> that she is Palestinian and complained directly to NYC Mayor Adams that Defendant NYC was discriminating against her and harassing her at City Hall because she is Palestinian and Muslim.

8.    NYC Mayor Adams brushed aside Plaintiff Rashid's complaints and shockingly told her "I do not know the difference between a Palestinian or Pakistanian, or Arab, all I know is that there is a Muslim community."

9. NYC Mayor Adams then explained that he believes all Muslims (including Plaintiff Rashid) were appropriately receiving condemnation because the Muslim community refused to provide a "unified" voice stating "Hamas is not" all Muslims.

10. NYC Mayor Adams then lectured the Muslim City Hall employees that Muslims were too busy organizing rallies to support Palestine and Palestinian rights, and that he believed Muslim pro-Palestinian rallies were equally as reprehensible as "Klu Klux Klan" rallies after George Floyd's death.

11. Defendants took no actions to stop the unlawful anti-Palestinian and anti-Muslim discrimination that Plaintiff Rashid repeatedly brought to Defendants' attention by lodging numerous legally protected complaints.

12. Instead, Defendants commenced a targeted campaign of unlawful discrimination and retaliation directed against Plaintiff Rashid which included, but was not limited to, the following:

- Halting Plaintiff Rashid's promotion to a substantial policy position in City Hall that NYC Mayor Adams' administration had approved <u>**five days**</u> before Plaintiff Rashid identified herself as Palestinian and complained of discrimination.
- Launching an unfounded Human Resources investigation into Plaintiff Rashid's unblemished and exemplary service in City Hall to ruin her career.
- Directing <u>only</u> Muslim City Hall employees (including Plaintiff Rashid) to refrain from discussing Palestinian rights or the situation in Gaza and warning <u>only</u> Muslim City Hall employees that they would be terminated if they ignored this anti-Palestinian and anti-Gaza edict.

- Demoting Plaintiff Rashid out of City Hall into a rudimentary and insignificant scheduling position buried deep in city government because she is a Palestinian Muslim that dared to complain of anti-Palestinian and anti-Muslim discrimination at City Hall.

13. Plaintiff Rashid suffered significant damages as result of Defendants' unlawful actions and brings this action to obtain declaratory, injunctive, compensatory, consequential, statutory, and punitive relief to address Defendants' intentional unlawful actions.

**PARTIES**

14. Plaintiff Rashid is an individual residing in New York City ("NYC"). At all times relevant to this action Plaintiff Rashid resided in NYC.

15. Plaintiff Rashid works for Defendant NYC in Manhattan.

16. Plaintiff Rashid is an employee of Defendant NYC as defined by Title VII, the NYCHRL and the NYSHRL.

17. Defendant NYC is a municipal corporation created and authorized under the laws of the State of New York.

18. Defendant NYC is an employer of Plaintiff Rashid as defined by Title VII, the NYCHRL, and the NYSHRL.

19. Defendant Varlack is a resident of NYC. Defendant Varlack is sued in her individual capacity and her official capacity as the former Chief of Staff to former NYC Mayor Adams.

**JURISDICTION AND VENUE**

20. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

21. Original jurisdiction exists because Plaintiff Rashid brings this action under Title VII. Supplemental jurisdiction exists because Plaintiff's claims brought under the NYSHRL and the NYCHRL are so related to Plaintiff Rashid's Title VII claims that they form the same case or controversy.

22. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because Defendants made all decisions and took all actions regarding the unlawful acts complained of herein within the Southern District of New York ("SDNY"). This Court is also the proper venue pursuant to 28 U.S.C. § 1391(b)(1) because Defendant NYC resides in the SDNY and all Defendants are residents of New York.

**PROCEDURAL REQUIREMENTS**

23. On September 6, 2024, Plaintiff Rashid filed EEOC Charge No. 520-2024-07900 against Defendant NYC alleging the violations of Title VII set forth in this Verified Complaint.

24. On October 20, 2024, Plaintiff Rashid filed Amended EEOC Charge No. 520-2024-07900 in order to provide the United States Equal Employment Opportunity Commission with additional facts that further demonstrated that Defendant NYC violated Title VII.

25. On May 13, 2026, the United States Equal Employment Opportunity Commission issued Plaintiff Rashid a Notice of Right to Sue regarding Amended EEOC Charge No. 520-2024-07900.

26. Plaintiff Rashid has exhausted all administrative prerequisites necessary to bring the Title VII claims set forth in this Verified Complaint.

27. Plaintiff Rashid is not required to exhaust any administrative prerequisites prior to filing the NYSHRL and NYCHRL claims set forth in this Verified Complaint.

28. Plaintiff Rashid is not required to file a notice of claim prior to filing the Title VII, NYSHRL and NYCHRL claims set forth in this Verified Complaint.[1]

29. Nonetheless, Plaintiff Rashid properly filed a notice of claim regarding the Title VII, NYSHRL and NYCHRL claims set forth in this Verified Complaint, over thirty days have elapsed since the notice of claim was presented to the New York City Comptroller, and the New York City Comptroller has neglected to make an adjustment or payment in response to Plaintiff Rashid's notice of claim.

30. Plaintiff Rashid filed this lawsuit within the applicable statute of limitations periods.

## STATEMENT OF FACTS

### Plaintiff Rashid's Successful Career at Defendant NYC

31. Plaintiff Rashid is a Muslim woman of Palestinian national origin.

32. Plaintiff Rashid is a longtime resident of NYC who has dedicated her professional career to serving NYC as an employee of Defendant NYC.

33. The Office of the NYC Public Advocate employed Plaintiff Rashid as a Communications Assistant intern from May 2013 until January 2014.

34. The NYC Mayor's Fund employed Plaintiff Rashid as a Communications/Social Media Associate from May 2014 until October 2014.

35. The NYC Department of Health and Mental Hygiene employed Plaintiff Rashid as a Press Assistant Intern from October 2014 until March 2015.

---

[1] See Stanley v. City of New York, 141 N.Y.S.3d 662, 671 (N.Y. Cnty., Sup. Ct. Dec. 23, 2020) (finding that filing a notice of claim is not required before bringing a NYCHRL lawsuit against the City of New York) (citing Margerum v. City of Buffalo, 24 N.Y.3d. 721, 727 (2015) (holding that filing a notice of claim is not required before bringing a NYSHRL lawsuit against a New York municipality)); Tour v. Erie Community College, 923 F.Supp. 13, 15 (W.D.N.Y. 1995) (holding that filing a notice of claim is not required before bringing a Title VII lawsuit) (citation omitted).

36.    The NYC Department of Health and Mental Hygiene employed Plaintiff Rashid as a Special Assistant to the Center for Health Equity's Deputy Commissioner from March 2015 until October 2019.

37.    The NYC Department of City Planning employed Plaintiff Rashid as a Special Assistant to the Commissioner/City Planning Commission Chair from October 2019 until May 2022.

38.    The NYC Office of Labor Relations employed Plaintiff Rashid as the WorkWell Program Coordinator from May 2022 until September 2022.

39.    Plaintiff Rashid performed exceptionally well in all these roles from May 2013 through September 2022.  Plaintiff Rashid received uniformly glowing reviews from Defendant NYC for her work performance during this period.

40.    Plaintiff Rashid did not receive any negative performance reviews from May 2013 through September 2022.

**Plaintiff Rashid's Employment with the NYC Mayor's Office**

41.    In summer of 2022, the NYC Mayor's Office recruited Plaintiff Rashid for a position in City Hall, located in Manhattan, NYC.

42.    Frank Carone ("Mr. Carone"), the former Chief of Staff to NYC Mayor Adams, personally interviewed Plaintiff Rashid and offered her a prestigious position as Special Assistant to the NYC Mayor's Chief of Staff starting in September 2022.

43.    Plaintiff Rashid is Muslim and wears a hijab. Everyone in the NYC Mayor's Office therefore immediately knew Plaintiff Rashid was Muslim when she accepted the position and began working at City Hall in September 2022.

44.    In contrast, Plaintiff Rashid did not tell anyone in the NYC Mayor's Office that she is Palestinian before being hired in September 2022.

45.    As Special Assistant to the NYC Mayor's Chief of Staff, Plaintiff Rashid reported directly to NYC Mayor Adams' Chief of Staff and reported indirectly to NYC Mayor Adams.

46.    Plaintiff Rashid immediately excelled as the Special Assistant to the Mayor's Chief of Staff. Plaintiff Rashid's duties and responsibilities included assisting with briefings issued to NYC Mayor Adams.

47.    Plaintiff Rashid helped streamline the process of gathering information to efficiently brief NYC Mayor Adams on essential issues. Plaintiff Rashid also reviewed NYC Mayor Adams' calendar to draft, review, and edit hundreds of briefing documents.

48.    In late 2022, Mr. Carone resigned.  On January 1, 2023, Defendant Varlack became NYC Mayor Adams' Chief of Staff and Plaintiff Rashid began working for Defendant Varlack and co-managed Defendant Varlack's transition process.

49.    Defendant Varlack told Plaintiff Rashid that NYC Mayor Adams set policy positions and everyone below NYC Mayor Adams in his administration was required to adhere to and implement his decisions and policies.  For example, City Hall employees were only allowed to make public statements or online posts that adhered to NYC Mayor Adams' policy positions.

50.    Defendant Varlack met with NYC Mayor Adams on a weekly basis to review City Hall hiring and staffing decisions with NYC Mayor Adams.  During these weekly meetings, Defendant Varlack made staffing proposals to NYC Mayor Adams such as hiring, promoting, transferring, or terminating employees at City Hall in accordance with NYC Mayor Adams' stated policy positions, goals and objectives.

51.     NYC Mayor Adams discussed Defendant Varlack's staffing proposals with Defendant Varlack and then they jointly aligned and executed City Hall staffing decisions in accordance with NYC Mayor Adams' stated policy positions, goals and objectives.

52.     Plaintiff Rashid oversaw logistics for Defendant Varlack's schedule, travel and speaking events. Plaintiff Rashid also led the hiring search and interview process to hire a new scheduler for Defendant Varlack and a new briefing associate for NYC Mayor Adams.

53.     Plaintiff Rashid also created an Executive Administration Guide that set out the entire operation of the Chief of Staff Office. Plaintiff Rashid then trained the incoming scheduler and three administrative assistants using the Executive Administration Guide she created.

54.     Plaintiff Rashid also provided operational assistance to help Defendant NYC process thousands of asylum seekers and reviewed hundreds of resumes to recommend new hires for Defendant NYC's Office of Asylum Seekers.

55.     Plaintiff Rashid also managed the Chief of Staff Office Human Resources functions, reviewing (and approving) hundreds of leave of absence requests and submitting employee timesheets (including Defendant Varlack's timesheets).

56.     Plaintiff Rashid also drafted briefings, conducted vetting research and coordinated speaking event logistics.

57.     Defendant Varlack memorialized Plaintiff Rashid's strong performance via March 2023 texts that stated "You're amazing.  Thank you so much" and "Thank goodness! You are amazing.  I'm so glad[.]"

58.     Shortly thereafter, Plaintiff Rashid returned from approved leave and was eagerly welcomed back. A co-worker texted "So excited to have you back!!!!!" and noted that a week of

completing Plaintiff Rashid's significant workload made the coworker "appreciate you SO MUCH cuz omg it's intense."

59. Defendant Varlack chimed in regarding Plaintiff Rashid's return to work, texting "Praise SOMEBODY!!!! Avengers reunited!"

60. Shortly thereafter, Plaintiff Rashid had an in-depth conversation with Defendant Varlack regarding Plaintiff Rashid's desire to be promoted to a policy focused position for Defendant Varlack's team and to significantly grow her tasks and responsibilities. Defendant Varlack responded enthusiastically and told Plaintiff Rashid she "was on track" to move into a policy position.

61. On May 2, 2023, Plaintiff Rashid had a conversation with Defendant Varlack wherein Defendant Varlack proposed that Plaintiff Rashid could be promoted to a more prestigious "Policy Analyst" position if Plaintiff Rashid wanted to "actually make her work on policy."

62. Plaintiff Rashid was thrilled with this promotion proposal and Defendant Varlack explained "there are enough areas that you are involved in that you could be involved in a more substantive role[.]"

63. Defendant Varlack summed up the offer by stating "I really do believe in setting people up for success" and mentioning Defendant NYC's City Hall would "eventually change your title to Policy Analyst and [you will] be able to do a deeper dive on some of these topics[.]"

64. In or about summer 2023, Defendant Varlack again told Plaintiff Rashid that she was doing an incredible job and "was on track" to be promoted into a policy focused role.

65. On June 26, 2023, DeShanna Alexander ("Ms. Alexander"), Defendant Varlack's then Deputy Chief Administrative Officer, emailed Plaintiff Rashid samples of "Policy Advisor"

job descriptions for Plaintiff Rashid to review in connection with Defendant Varlack's representations that Defendant NYC would promote Plaintiff Rashid into a policy role.

66. On July 1, 2023, Katie Maro ("Ms. Maro"), Defendant Varlack's then First Deputy Chief of Staff, made a note in her OneNote online to-do list which indicates "Hasibe: Ask [NYC Chief Administrative Officer] Mir [Bashar ("Mr. Bashar")] for policy analyst [Job Description]." This note memorializes that on July 1, 2023, Ms. Maro was working to create a new "Policy Analyst" job description with Mr. Bashar and thereby promote Plaintiff Rashid into a more prestigious policy focused position.

67. In September 2023, Defendant Varlack routinely praised Plaintiff Rashid, including a text exclaiming "Outstanding! Great Work!" Defendant Varlack also created a new policy focused job description in September 2023 and planned to submit Plaintiff Rashid's promotion to Defendant NYC in October 2023.

68. On October 20, 2023, Ms. Maro made a note under Mr. Bashar's meeting agenda page in the Chief of Staff OneNote online to-do list which indicates "Hasibe Title Change: Policy Advisor – KM submit in MOM." KM stands for Katie Maro and MOM is the "Mayors Office Manager" system that is used by Defendant NYC's City Hall managers when they make personnel changes.

69. In other words, on October, 20, 2023, Ms. Maro submitted Plaintiff Rashid's promotion to a brand new policy focused position to the NYC Mayors Office Manager system.

70. <u>Five days later</u>, on October 25, 2023, Plaintiff Rashid told NYC Mayor Adams she was Palestinian and complained directly to NYC Mayor Adams that she was experiencing significant ongoing discrimination in the workplace because she was Palestinian and Muslim.

71. In response, Defendants stopped the process of promoting Plaintiff Rashid, began

a coordinated discrimination and retaliation campaign against Plaintiff Rashid, and ultimately demoted Plaintiff Rashid out of the NYC Mayor's Office because she is Palestinian/Muslim and lodged protected complaints.

**Defendants' Pattern of Discrimination Against Palestinians and Muslims**

72.     On October 7, 2023, Hamas militants launched an attack on Israel from Gaza. The Israeli Defense Force ("IDF") immediately retaliated with an extensive aerial bombardment and military invasion of Gaza.

73.     On October 7, 2023, NYC Mayor Adams released a statement that indicated that NYC Government had "deploy[ed] additional resources to Jewish communities and houses of worship citywide to ensure that our communities have the resources they need to make sure everyone feels safe."  NYC Mayor Adams did not mention NYC's Muslim and Palestinian communities in his October 7, 2023 statement.

74.     Shortly after October 7, 2023, members of NYC Mayor Adams' administration attended NYC Mayor Adams' Town Hall advisory Council in Crown Heights, Brooklyn to address safety concerns in the Jewish community.

75.     During this town hall, many anti-Muslim and anti-Arab comments were made publicly, and numerous members of NYC Mayor Adams' Administration witnessed the discriminatory comments and chose not to reject or even respond to any of these discriminatory comments.

76.     Following October 7, 2023, Muslim and Palestinian employees of Defendant NYC that worked in the administration of NYC Mayor Adams were singled out and scrutinized by superiors in NYC Mayor Adams' administration because they are Muslim and/or Palestinian.

77.    For example, Hassan Naveed ("Mr. Naveed"), who is Muslim and the former Executive Director of the office for the Prevention of Hate Crimes, was pulled aside by his supervisors and interrogated about his thoughts on the October 7, 2023 Hamas attacks.

78.    During this conversation, Mr. Naveed's supervisors asked Mr. Naveed what he thought about the "40 beheaded babies" allegedly discovery in the aftermath of October 7, 2023, a story which has been roundly debunked.  Mr. Naveed's supervisors also made numerous negative assumptions about Mr. Naveed's beliefs and policies which were based solely on his Muslim identity.

79.    On October 10, 2023, NYC Mayor Adams attended the "New York Stands with Israel" rally and spoke in pertinent part as follows:

> Your fight is our fight. Your fight is our fight. And right here in New York we have the largest Jewish population outside of Israel. This is the place that our voices must raise and cascade throughout the entire country. We will not be all right until every person responsible for this act is held accountable. And we don't have to pretend.
> . . . .
> And so I say to you, I'm not here because I'm your mayor. I've been in Israel as a state senator, I protected the community of the city in general but specifically the Jewish community as a police officer. I stood with you as borough president. And now I'm here today to say not only am I the chief executive of this city, but I'm your brother. I'm your brother.
>
> Your fight is my fight.

80.    NYC Mayor Adams did not mention NYC's Muslim and Palestinian communities in his October 10, 2023 remarks.

81.    While NYC Mayor Adams and his Administration correctly worked to assuage fears and address hate crimes against the Jewish community, his Administration ignored the fears in the Muslim and Palestinian communities and failed to address hate crimes directed against the Muslim and Palestinian communities.

82.     On October 12, 2023, NYC Mayor Adams' Deputy Chief of Staff and Senior Advisor Menashe Shapiro ("Mr. Shapiro") tweeted the following from his Defendant NYC government X account: "One side cares who they hit and focuses on precision, and one side doesn't care who they hit, maim, torture, and kill. Whose side are you on?"

83.     On October 13, 2023, Mr. Shapiro tweeted on his Defendant NYC government X account that individuals that criticize the Israeli government and its actions in Gaza "are not leaders.  They are full throated supporters of terrorism.  FULL STOP."

84.     On October 15, 2023, Mr. Shapiro tweeted on his Defendant NYC government X account that individuals that criticize the Israeli government and its actions in Gaza are committing "anti-Semitism."

85.     Mr. Shapiro did not acknowledge or mention the plight of innocent Palestinian and Muslim civilians dying in Gaza.

86.     Mr. Shapiro also expressed doubt and outright denial via his Defendant NYC government X account regarding the number of innocent Palestinians killed in Gaza.

87.     Mr. Shapiro repeatedly utilized his Defendant NYC government X account to endorse hateful, Islamophobic and anti-Palestinian rhetoric and policies.

88.     Mr. Shapiro utilized his Defendant NYC government X account in this discriminatory manner while it explicitly referred to him as NYC Mayor Adam's Deputy Chief of Staff and Senior Advisor, thereby publicly making these discriminatory statements on behalf NYC Mayor Adams' administration.

89.     On October 15, 2023, NYC Mayor Adams commented on MSNBC that he was "going to use every part of our law enforcement apparatus to protect . . . specifically those of the

Jewish community here in the city." NYC Mayor Adams did not mention NYC's Muslim and Palestinian communities on MSNBC.

90. On October 17, 2023, NYC Mayor Adams released a statement regarding a large explosion at the Al Ahli Arab Hospital in Gaza that killed dozens of Palestinian civilians. NYC Mayor Adams' statement did not acknowledge the death of innocent Palestinian and Muslim civilians; instead, it announced "we await confirmation of details from our intelligence community[.]"

91. On October 18, 2023, Mr. Shapiro tweeted on his Defendant NYC government X account as follows: "Isn't it crazy how Gaza is running out of everything but rockets?" Mr. Shapiro's comments, which he made on behalf of NYC Mayor Adams' administration, approved of Israel blockading Gaza and thereby depriving innocent Palestinian civilians of necessities such as food, water, medicine, fuel and electricity.

**Plaintiff Rashid Complains of Discrimination and Harassment**

92. On October 25, 2023, roughly a dozen Muslim City Hall employees (including Plaintiff Rashid) met with NYC Mayor Adams to complain about City Hall's response to the Israel-Hamas conflict and to directly lodge protected complaints about the discriminatory statements and actions of their coworkers in NYC Mayor Adams' administration.

93. The Muslim employees (including Plaintiff Rashid) patiently explained to NYC Mayor Adams that the rhetoric coming from City Hall (including, but not limited to, the public comments made by NYC Mayor Adams and Mr. Shapiro on behalf of the administration) was discriminatory against Defendant NYC's Muslim and Palestinian employees, was inflammatory, and would incite violence against Muslims and Palestinians.

94.     The Muslim employees (including Plaintiff Rashid) explained to NYC Mayor Adams that it was unacceptable that NYC Mayor Adams and his administration completely ignored the suffering of Defendant NYC's Palestinian employees and refused to even say the word Palestinian publicly.

95.     The Muslim employees (including Plaintiff Rashid) also complained that NYC Mayor Adams had not reached out to Defendant NYC's Muslim and Palestinian employees regarding their legitimate fear of discrimination and hate crimes due to the Israel-Hamas conflict.

96.     The Muslim employees (including Plaintiff Rashid) explained to NYC Mayor Adams that Defendant NYC's Muslim and Palestinian employees were extremely fearful of Islamophobic attacks and women that wear hijabs were particularly vulnerable and afraid in public.

97.     The Muslim employees (including Plaintiff Rashid) also strongly objected to NYC Mayor Adams' official discriminatory decision to ignore the plight of Palestinian civilians in Gaza who were cut off from food, water and electricity and being killed by the IDF's aerial bombardment.

98.     The Muslim employees (including Plaintiff Rashid) complained to NYC Mayor Adams that they were being intentionally ignored by NYC Mayor Adams' administration because they are Muslim and/or Palestinian and were being discriminated against and harassed in their workplace by coworkers at Defendant NYC's City Hall because NYC Mayor Adams' administration's official one-sided rhetoric condemned all Palestinians and Muslims.

99.     Plaintiff Rashid delivered remarks and legally protected complaints directly to NYC Mayor Adams at the October 25, 2023 meeting as follows:

> I am Palestinian. Unapologetically and proudly. Deemi falastini (my blood is Palestinian) yesterday, today and forever. I have been in city government for

years dedicating my career to equity, engagement and community building. Being Palestinian, Muslim and a hijabi I've had to deal with being dehumanized in society for years.

**But, I have never felt so dehumanized, devalued and without a voice in my place of work as I have these past weeks. <u>Simply for being Palestinian</u> – due to the rhetoric coming out of city hall and events hosted by the administration.**
. . . .
I have had to sit silently while being re-traumatized every day for over a week with the images and videos of your tweets, speeches and news quotes. Never once mentioning the innocent Palestinians killed.

You are the mayor for all New Yorkers. **And these past weeks all I could see and hear coming from City Hall was that there is no place for me and Palestinians in New York.**
. . . .

My [Palestinian and Muslim] community is feeling under siege right now. They are being asked to pick a side, choose Israel or you support terrorism. Well, I choose to stand on the side of Palestinian humanity. I choose to stand against Palestinian genocide.

More than 800 scholars of international law and genocide put forward a statement that the Israeli military may be committing genocidal acts against Palestinians in the Gaza Strip.

It's **dehumanizing** when a community feels unseen and feels like they cannot express support or sorrow of their people, their families, themselves, without being grouped with Hamas.

When so much of the conversation is about Israel without one mention of the thousands of civilians dying daily in Palestine like the West Bank - where I have family - and Gaza, it can send the signal that Palestinians don't count. **<u>That all Palestinians are terrorists.</u>**

Here in New York, we have one of the largest Palestinian American communities in the country.

You know this community. There is so much pain and fear in this community.

**Not just about what is happening in Gaza, but fear of what could happen and is happening already in New York City. Fear of speaking out. <u>Fear of being discriminated against. Fear of harassment.</u> Fear of hatred. Fear of violence.**
. . . .

**You have Palestinians right here in City Hall.**

**I am Palestinian. I am not a terrorist. And I am also not OK.**

100. Plaintiff Rashid's complaints to NYC Mayor Adams on October 25, 2023 was the first time Plaintiff Rashid notified Defendant NYC that she is Palestinian.

101. Plaintiff Rashid's complaints to NYC Mayor Adams on October 25, 2023 memorialized and complained that Plaintiff Rashid was being treated in a harassing and discriminatory manner at Defendant NYC's City Hall by her coworkers because of Plaintiff Rashid's Palestinian identity and Muslim faith.

102. Plaintiff Rashid's complaints to NYC Mayor Adams on October 25, 2023 were protected complaints under Title VII, the NYSHRL and the NYCHRL because she explicitly told NYC Mayor Adams that she was being discriminated against and harassed in her workplace (Defendant NYC's City Hall) by her coworkers (Defendant NYC's employees) because she is Palestinian and Muslim.

103. In response, NYC Mayor Adams dismissed Plaintiff Rashid's protected complaints by combatively stating "my number one disappointment is there has not been a unified message from the Muslim community standing up and saying this is not us" in reference to the October 7 attack.

104. NYC Mayor Adams then shared his belief that Muslims had been appropriately receiving hate because Muslims, as a community, had failed to adequately condemn Hamas. NYC Mayor Adams claimed that there had been no "solid" or "unified" voice among the Muslim community making clear that "Hamas is not us [Muslims]." NYC Mayor Adams further stated that "people associate Hamas with Islam because there was never a statement that was made [by all Muslims] that separated the two."

105.    NYC Mayor Adams' comments perpetuated harmful discriminatory stereotypes and assumptions of Muslims; namely, that Muslims as a collective are responsible for the actions of Hamas, and that Muslims are a monolith who must speak with one unified voice.

106.    NYC Mayor Adams also commented during the October 25, 2023 meeting that instead of condemning Hamas, Muslims were too busy organizing protests to support Palestine and Palestinian rights.  NYC Mayor Adams then compared these Muslim protestors to "Klu Klux Klan" protests – explicitly condemning Muslims such as Plaintiff Rashid that support Palestine and Palestinians.

107.    NYC Mayor Adams' negative characterization of Muslims that support Palestinian rights was discriminatory and offensive, and demonstrates NYC Mayor Adams' negative perceptions of Palestinians and Muslims writ large.

108.    Plaintiff Rashid immediately pushed back, telling NYC Mayor Adams that it was unfair to require every member of the Muslim community such as herself to condemn a specific group.

109.    Plaintiff Rashid further complained that requiring her as a Muslim employee of Defendant NYC to "constantly and repeatedly condemn [October 7] is the same as asking us to condemn 9/11 for over a decade." This requirement discriminates against Plaintiff Rashid because it requires more of her explicitly because she is a Muslim City Hall employee.

110.    NYC Mayor Adams then told Plaintiff Rashid dismissively "I do not know the difference between a Palestinian or Pakistanian, or Arab, all I know is that there is a Muslim community."

111.    NYC Mayor Adams' comment clearly shows that NYC Mayor Adams did not care that Plaintiff Rashid was directly complaining to him of being harassed and discriminated against in her workplace because she is Palestinian and Muslim.

112.    Instead, NYC Mayor Adams told Plaintiff Rashid that she needed to publicly condemn Hamas because she is Muslim and NYC Mayor Adams believes all Muslim City Hall employees are required to publicly condemn Hamas.

113.    Plaintiff Rashid was taken aback by NYC Mayor Adams' discriminatory attempt to dodge and deflect her protected complaint, and his complete failure to recognize her Palestinian identity.

114.    Plaintiff Rashid was shocked by NYC Mayor Adams outrageously and falsely comparing her support of Palestine and Palestinian rights with the "Klu Klux Klan" and his discriminatory insistence that Muslim City Hall employees like Plaintiff Rashid need to publicly state they are not Hamas.

**Defendants' Continued Discrimination and Retaliation
After the October 25, 2023 Meeting**

115.    Immediately after the October 25, 2023 meeting, numerous City Hall employees that had been friendly with Plaintiff Rashid began avoiding and shunning her in the workplace.

116.    Overnight, City Hall coworkers stopped talking to Plaintiff Rashid and refused to interact with Plaintiff Rashid because she publicly identified herself as a Palestinian and dared to confront NYC Mayor Adams directly regarding his administration's discriminatory anti-Palestinian and anti-Muslim rhetoric and policies.

117.    On October 26, 2023, Defendant Varlack pulled Plaintiff Rashid aside and announced that she was made aware that Plaintiff Rashid was visibly upset during the October 25, 2023 meeting with NYC Mayor Adams.

118. In response, Plaintiff Rashid reiterated her protected complaints regarding the administration's discriminatory anti-Palestinian and anti-Muslim rhetoric and policies.

119. Plaintiff Rashid also explained to Defendant Varlack that she feared unlawful retaliation from Defendant NYC because she had publicly complained about experiencing anti-Palestinian and anti-Muslim harassment and discrimination at City Hall.

120. Plaintiff Rashid's complaints to Defendant Varlack on October 26, 2023 of discrimination and harassment because she was Palestinian and Muslim included, but were not limited to, the following complaints:

- "The **Muslim staff** really felt the rhetoric has been really one-sided and **we have been silenced**, and we cannot even express that we are upset by the rhetoric, not just coming out of here (City Hall), but like overall, and that there was absolutely no support for **Muslim staff** at all[.]"
- "We've seen other [Defendant NYC government] agencies send out emails to host conversations that seemed **very Islamophobic**."
- "It just felt like **Muslim staff** [in City Hall] were once again sort of '**You have to keep quiet, or you are going to get in trouble if you speak up.**'"
- "We (the Muslim staffers) are so traumatized after 9/11. When people did speak up, people were fired, and people are still getting fired to this day now."
- Plaintiff Rashid explained to Defendant Varlack that Muslim staffers were receiving emails that "**say if you are pro-Palestinian that equates to you being Pro-Hamas.**"
- "It is really scary. Seeing people [in the NYC Mayor Adams administration] meet with the [anti-Palestinian NYC] council woman that brought a gun to the [pro-Palestinian] rally. . . . She said we have friends in the administration – to us (the Muslim staffers) that meant that we cannot speak."

121. Plaintiff Rashid's complaints to Defendant Varlack on October 26, 2023 were protected complaints under Title VII, the NYSHRL and the NYCHRL because she explicitly told Defendant Varlack that she was being discriminated against and harassed in her workplace

(Defendant NYC's City Hall) by her coworkers (Defendant NYC's employees) because she is Palestinian and Muslim.

122. In response, Defendant Varlack admitted that "I did not know that you are Palestinian" and stated "I am very sorry about that" discriminatory treatment. Thus, Defendant Varlack admitted on October 26, 2023 that she did not know Plaintiff Rashid was Palestinian prior to October 25, 2023 and admitted that the discriminatory treatment Plaintiff Rashid was experiencing was wrong.

123. Despite these protected complaints, Defendants continued discriminating against Plaintiff Rashid and began retaliating against Plaintiff Rashid because she had lodged protected complaints directly to NYC Mayor Adams and Defendant Varlack.

124. On November 14, 2023, NYC Mayor Adams hosted an interfaith roundtable event related to the rise of hate in NYC due to the Israel-Hamas conflict. NYC Mayor Adams' administration intentionally organized this event to exclude Muslim Palestinians from participating.

125. Plaintiff Rashid therefore lodged another protected complaint to Defendant Varlack that the roundtable event intentionally discriminated against Muslim Palestinians by intentionally excluding Muslim Palestinians (such as Plaintiff Rashid) from attending and intentionally failing to acknowledge and incorporate the fears, concerns and safety requirements of Palestinian employees (such as Plaintiff Rashid).

126. In response, Defendant Varlack did not take any actions to rectify the discriminatory situation involving the interfaith roundtable.

127. On November 20, 2023, Defendant Varlack invited Plaintiff Rashid to attend a weekly in-person meeting to discuss community concerns and to coordinate NYC Mayor

Adams' external talking points and events.   Plaintiff Rashid thereafter began attending the weekly meeting with the following Defendant NYC employees:

- Defendant Varlack
- Mr. Shapiro
- Kristin Rezek ("Ms. Rezek") (Chief of Staff for the Office of Intergovernmental Affairs)
- Fabien Levy ("Mr. Levy") (Deputy Mayor for Communications)
- Mohamed Bahi ("Mr. Bahi") (Senior Liaison to the Muslim Community)
- Fred Kreizman ("Mr. Kreizman") (Commissioner, Community Affairs Unit)
- Joel Eisdorfer ("Mr. Eisdorfer") (Senior Advisor and Chair of the Jewish Advisory Council)
- Gilford Monrose (Executive Director of the Office of Faith-Based and Community Partnerships)
- Kayla Mamelak ("Ms. Mamelak") (Deputy Press Secretary and Communications Advisor)
- Basem Hassan ("Mr. Hassan") (Communications Officer)

128.    On November 20, 2023, Defendant Varlack created a rapid response email thread for the weekly meeting attendees to discuss and react to urgent issues. This email thread drafted, revised and ultimately approved public statements made by NYC Mayor Adams.

129.    From November 20, 2023 to the conclusion of NYC Mayor Adams' term on December 31, 2025, the discussions on this email thread predominately dealt with the Israel-Hamas conflict and the NYC Jewish/Palestinian community.

130.    Defendant Varlack intentionally left Plaintiff Rashid off the email thread because Plaintiff Rashid is Palestinian and previously lodged protected complaints regarding ongoing discrimination against Palestinians and Muslims at City Hall.

131.    Plaintiff Rashid therefore lodged another protected complaint to Defendant Varlack in November 2023 that noted that she was the only Palestinian in the group and was being left off the thread intentionally because she was Palestinian.

132.    Plaintiff Rashid's complaint to Defendant Varlack in November 2023 was protected under Title VII, the NYSHRL and the NYCHRL because she explicitly told Defendant

Varlack that she was being discriminated against because she was intentionally treated adversely and left off the thread because she is Palestinian.

133.    Plaintiff Rashid requested to be added to the email thread on two separate occasions.  In response, Defendant Varlack dismissively told Plaintiff Rashid that Plaintiff Rashid was not included on the thread because Defendant Varlack wanted to "keep the thread small."

134.    This explanation was false, however, because Ms. Rezek was the only other member of the weekly group that was not on the email thread.  Notably, Ms. Rezek is an Arab woman of Lebanese national origin.

135.    Defendant Varlack intentionally chose to exclude two Arab women who hail from places (Palestine and Lebanon) that were involved in military conflict with Israel – this was not a coincidence.

136.    Plaintiff Rashid was the only Palestinian at the weekly meeting, and she was excluded because she is Palestinian and lodged protected complaints.  Ms. Rezek was the only Lebanese individual at the weekly meeting, and she was excluded because she is Lebanese.

137.    On November 20, 2023, Plaintiff Rashid told the weekly group that a video circulating on social media showed a Muslim woman on the NYC subway carrying a Palestinian flag being physically attacked and her Palestinian flag being ripped away.  Plaintiff Rashid notified the weekly group that NYC Mayor Adams should release a statement denouncing the hateful incident because it demonstrated a hate filled violent attack against a Palestinian and against Palestine.

138.    The email thread discussed the incident (without Plaintiff Rashid's input) and drafted a statement for NYC Mayor Adams. During this email discussion, Mr. Shapiro repeatedly removed proposed language referencing a Palestinian flag and Palestine.

139.    Mr. Shapiro repeatedly removed this language because NYC Mayor Adams' administration intentionally avoided referencing Palestine, Palestinians and violence committed against Palestinians.

140.    On November 26, 2023, Plaintiff Rashid told the weekly group that three Palestinians were targeted and shot in Vermont because they were speaking Arabic and wearing kufiyahs (a Palestinian scarf) – an anti-Palestinian and anti-Muslim hate crime.  Plaintiff Rashid notified the weekly group that NYC Mayor Adams should release a statement denouncing the hateful incident because it demonstrated a hate filled violent attack against Palestinians and Muslims.

141.    The email thread discussed the incident (without Plaintiff Rashid's input) and drafted a statement for NYC Mayor Adams.  During this discussion, Mr. Levy, the Deputy Mayor of Communications, removed language referencing the kufiyahs.  Mr. Levy removed this Palestinian reference because NYC Mayor Adams' administration intentionally avoided referencing Palestine, Palestinians and violence committed against Palestinians.

142.    On December 11, 2023, Plaintiff Rashid attended the weekly group meeting and raised the disturbing and violent comments made by Rabbi Shmuel M. Butman ("Rabbi Butman") at a public event in Central Park.  Rabbi Butman stated at the event, "we are going to clean up Gaza" and "Gaza is going to be clean once and for all."

143.    Plaintiff Rashid noted that these words are understood by the Palestinian community as a call for the "ethnic cleansing" (violent removal) of Palestinians from Gaza.

144. Plaintiff Rashid complained during the weekly meeting that NYC Mayor Adams should not attend a planned event with Rabbi Butman due to these discriminatory comments proposing the ethnic cleansing of Palestinians.

145. The weekly group verbally agreed on December 11, 2023 that no one from NYC Mayor Adams' administration should attend the planned event with Rabbi Butman due to his discriminatory comments proposing the ethnic cleansing of Palestinians.

146. Ultimately, Mr. Eisdorfer, NYC Mayor Adams' Senior Advisor, and Mr. Kreizman, Commissioner of the Community Affairs Unit, ignored Plaintiff Rashid's complaint, disregarded the weekly group's prior agreement, and attended the event with Rabbi Butman despite his ethnic cleansing rhetoric days earlier.

147. This decision by Mr. Eisdorfer and Mr. Kreizman publicly affiliated the administration of NYC Mayor Adams with discriminatory comments against Palestinians.

148. On December 18, 2023, the weekly group learned that NYC Mayor Adams had agreed to attend a private screening put on by the IDF of video footage from October 7, 2023. Mr. Shapiro told the weekly group that NYC Mayor Adams viewing the footage would help inform the administration's internal workplace policies, including how to deal with antisemitism. Mr. Shapiro's statements indicated that many internal workplace policies, including hiring and firing decisions, would be impacted by senior officials in the administration viewing the footage.

149. In response, Plaintiff Rashid raised concerns in the weekly group that exposing NYC Mayor Adams' senior staff to selective footage edited by a foreign military could create bias against Palestinian employees of Defendant NYC such as herself. Plaintiff Rashid specifically stated that NYC Mayor Adams' senior staff from various agencies watching the curated footage would ultimately cause discriminatory bias against Palestinians employees.

150. In or about December 2023, Defendant Varlack directed Plaintiff Rashid to circulate a list of potential candidates to serve on NYC Mayor Adams' Youth Advisory Board.

151. On December 19, 2023, Plaintiff Rashid provided the weekly group with a list of potential individuals to select for NYC Mayor Adams' Youth Advisory Board pursuant to Defendant Varlack's instructions.

152. After viewing the list of potential candidates, Mr. Shapiro rejected the majority the candidates because they posted pro-Palestinian comments or comments critical of the Israeli government on social media.

153. Plaintiff Rashid lodged a protected complaint to Defendant Varlack, complaining that these rejections were obviously biased and discriminatory because they treated Palestinian identity and support for Palestinians as disqualifying. Defendant Varlack ignored Plaintiff Rashid's protected complaint of discrimination.

154. On December 23, 2023, Mr. Bahi, NYC Mayor Adams' Senior Liaison to the Muslim Community, texted all the Muslim City Hall employees as follows:

> Does [City Hall] support Israel?
>
> answer is clear
>
> worst possible thing to do is make our team look like we are anti-mayor
>
> if that goes out, we are finished.
>
> and then replaced by parrots

155. Mr. Bahi intentionally sent these texts to only the Muslim City Hall employees because he was intentionally and discriminatorily treating the Muslim City Hall employees differently than all other non-Muslim employees at City Hall.

156.    Mr. Bahi's December 23, 2023 texts to the Muslim City Hall employees indicated that if the Muslim City Hall employees publicly announced their disagreements with NYC Mayor Adams' rhetoric on the Israel-Hamas conflict they would be fired and "replaced by parrots" that repeated NYC Mayor Adams' rhetoric.

157.    Mr. Bahi's reference to "our team" in the text messages referred to the Muslim City Hall employees and Mr. Bahi's texts were intended to muzzle specifically the Muslim City Hall employees.

158.    On December 27, 2023, Mr. Bahi instructed the Muslim City Hall employees that NYC Mayor Adams would not meet with anyone that wanted to discuss Palestinians or Gaza.

159.    Mr. Bahi underlined this instruction by sending a voice note specifically to the Muslim City Hall employes where he reiterated the "do not discuss Palestine and Gaza" edict he was enforcing specifically on the Muslim City Hall employees.

160.    On December 27, 2023, Plaintiff Rashid texted Defendant Varlack as follows:

> For MEA [Mayor Eric Adams] agenda. Does MEA not want to meet with Muslim community if they speak about Palestine? Bahi is under the impression that's the case. As a result there haven't been more Muslim community events because Bahi doesn't want the community to bring up Palestine to MEA and Muslim community won't meet with MEA if Palestine is a banned topic.

161.    On December 28, 2023, Plaintiff Rashid told Defendant Varlack again about Mr. Bahi's instructions that had been directed to only the Muslim City Hall employees and asked if Defendant Varlack could confirm Mr. Bahi's "do not discuss Palestine and Gaza" edict.

162.    Plaintiff Rashid also complained that if Mr. Bahi was correct, NYC Mayor Adams would not be able to schedule meetings with the Muslim community because the plight of Palestinians and Gaza were top concerns of the Muslim community.

163. On December 28, 2023, Plaintiff Rashid explicitly complained to Defendant Varlack that Mr. Bahi's edict was discriminating against Palestinian City Hall employees (such as Plaintiff Rashid) by silencing Palestinian concerns.

164. On December 28, 2023, Plaintiff Rashid explicitly complained to Defendant Varlack that Mr. Bahi's edict was discriminating against Muslim City Hall employees (such as Plaintiff Rashid) because it was directed only at the Muslim City Hall employees.

165. Plaintiff Rashid's complaints to Defendant Varlack on December 28, 2023 were protected complaints under Title VII, the NYSHRL and the NYCHRL because she explicitly told Defendant Varlack that she was being discriminated against and harassed in her workplace (Defendant NYC's City Hall) by her coworker (Mr. Bahi) because she is Palestinian and Muslim.

166. On January 2, 2024, Plaintiff Rashid texted Defendant Varlack as follows:

> Please see attached a voice note from Bahi.
>
> Over the weekend, I became aware that Bahi puts "conditions" (his word) on the topic of Palestine/Gaza with the Muslim community who want to have meetings with MEA. He is instructing community members that Gaza/Palestine is not to be the main topic of conversation with MEA. The community can ask a question about Gaza but the meeting cannot be exclusively about discussing Palestine.
>
> In Bahi's voice note you will hear him informing us about getting the 96th St. Mosque to agree to his condition for a planned meeting in January. This is not just Bahi assuming MEA doesn't want Gaza to be discussed, this is now Bahi representing the administration's position on this issue and telling the Muslim community there are conditions they have to agree to before he will organize a CAU meeting with them. Since he is widely known as the CAU Liaison for MEA, the community will wrongly interpret Bahi's conditions to be directed from MEA.
>
> I am concerned this will only serve to put the mayor even further at odds with the Arab/Muslim community and could result in accusation of bias[.]

167. Plaintiff Rashid's January 2, 2024 text to Defendant Varlack attached a voice note from Mr. Bahi to the Muslim City Hall employees where he indicated that "I already told

[Muslim community leaders] about the conditions" where "Gaza should not be the main focus" of any meeting with NYC Mayor Adams.

168.   Plaintiff Rashid's complaints to Defendant Varlack on January 2, 2024 were protected complaints under Title VII, the NYSHRL and the NYCHRL because she explicitly told Defendant Varlack that she was being discriminated against and harassed in her workplace (Defendant NYC's City Hall) by her coworker (Mr. Bahi) because she is Palestinian and Muslim.

169.   In response to Plaintiff Rashid's text, Defendant Varlack informed Mr. Bahi's supervisor, Mr. Kreizman, about the audio recording of Mr. Bahi's instructions to the Muslim City Hall employees.

170.   By attaching Mr. Bahi's voice note, Plaintiff Rashid provided the Defendants with hard evidence to support her protected complaints that a NYC City Hall employee (Mr. Bahi) was actively discriminating against Plaintiff Rashid because she is a Muslim City Hall employee voicing Palestinian concerns and supporting Palestinian rights.

171.   In response, Defendants did not discipline Mr. Bahi for his "anti-Gaza" edict. Instead, Defendants viewed Plaintiff Rashid's complaint of discrimination (and hard evidence of discrimination) as a problem to be resolved by further discrimination and retaliation against Plaintiff Rashid.

172.   On January 4, 2024 Mr. Kreizman called Plaintiff Rashid and asked her if the "Muslims [in City Hall] who were working together would leak this to the community."  Mr. Kriezman's comments were targeted only at the Muslim City Hall employees and discriminatorily and falsely accused only the Muslim City Hall employees of conspiring to "leak" Mr. Bahi's edict "to the community."

173. Rather than addressing Plaintiff Rashid's protected complaint of discrimination, Mr. Kreizman wanted to make sure the Muslim City Hall staffers were keeping their mouths shut. A clear threat directed at only the Muslem City Hall employees.

174. Plaintiff Rashid immediately pushed back against Mr. Kreizman's outrageous and discriminatory allegation, noting that the Muslim City Hall employees worked tirelessly to support NYC Mayor Adams. Plaintiff Rashid also pointed out that there was nothing to leak because Mr. Bahi already relayed the anti-Gaza "condition" to Muslim community leaders.

175. On January 12, 2024, Plaintiff Rashid complained to Defendant Varlack that as a Palestinian Muslim she felt unsafe at work because numerous official government tweets made by her City Hall coworkers publicly denied the number of Palestinians killed in Gaza and publicly denied the humanitarian crisis in Gaza.

176. Plaintiff Rashid explained to Defendant Varlack that she was lodging this complaint because it was not okay that her coworkers kept making discriminatory comments about Palestinians and openly supporting the killing of Palestinian civilians.

177. Plaintiff Rashid's complaints to Defendant Varlack on January 12, 2024 were protected complaints under Title VII, the NYSHRL and the NYCHRL because she explicitly told Defendant Varlack that she was being discriminated against and harassed in her workplace (Defendant NYC's City Hall) by her coworkers (Defendant NYC's employees) because she is Palestinian and Muslim.

178. On January 12, 2024, Defendant Varlack came to Plaintiff Rashid and asked her questions about a map identifying Arabic speaking countries that a NYC public school teacher had utilized in class. During this conversation, Defendant Varlack asked Plaintiff Rashid why

the map identified Palestine but did not identify the combined land area of Israel, the West Bank and Gaza as “Israel” instead.

179. In response, Plaintiff Rashid told Defendant Varlack that Israel is not a predominantly Arabic speaking country and this was probably the reason it was not included on a map of predominantly Arabic speaking countries. Plaintiff Rashid further explained that labeling the combined land area of Israel, the West Bank and Gaza as “Israel” is problematic because it erases Palestinian identity.

180. Defendant Varlack responded to Plaintiff Rashid’s comments by tersely stating “I just wouldn’t have done the damn map” and thereby endorsed NYC public schools ignoring the existence of Palestinians and Palestinian identity.

181. On February 1, 2024 NYC Mayor Adams hosted a World Hijab Day round-table event. Mr. Kreizman asked Plaintiff Rashid to help put on the event.

182. During the planning stages, a female Muslim liaison to NYC Mayor Adams told Plaintiff Rashid that during the event she was prohibited from commenting on anything political. This was a clear instruction to avoid talking about the plight of Palestinians in Gaza.

183. Once again, NYC Mayor Adams’ administration intentionally silenced Plaintiff Rashid because she was a Muslim Palestinian – clearcut discrimination.

**<u>Defendants’ Discriminatory and Retaliatory Demotion of Plaintiff Rashid</u>**

184. On December 22, 2023, Defendant Varlack pulled Plaintiff Rashid aside and directed her to compile video footage for NYC Mayor Adams to watch showing the results of the aerial bombardment and invasion of Gaza.

185. On December 26, 2023, Plaintiff Rashid texted Defendant Varlack a link to a Dropbox that contained the first draft of the Gaza footage that Defendant Varlack directed

Plaintiff Rashid to compile for NYC Mayor Adams to view.

186. On January 10, 2024, Plaintiff Rashid provided Defendant Varlack a link to the first draft of the Gaza footage via the OneNote system and noted in OneNote "I was able to upload the video I compiled to Vimeo."

187. On January 16, 2024, Defendant Varlack told the weekly group that Plaintiff Rashid would present video footage of Gaza for NYC Mayor Adams to view. In response, many of the weekly group members (including Mr. Shapiro) were immediately, vocally and vociferously unhappy about this project and alleged that any footage that Plaintiff Rashid presented from Doctors Without Borders "would be biased towards Israel."

188. Later that same day, Defendant Varlack texted Plaintiff Rashid as follows:

> Hi Hasibe – I was not aware, until this morning, that you are the person that compiled this footage. That is a significant fact that I should have been aware of. Additionally, the methodology of how and where this video was compiled, matters. Let's discuss when you are back in the office.

189. Plaintiff Rashid was confused by this text because Defendant Varlack had personally instructed Plaintiff Rashid to compile the footage on December 22, 2023 and Plaintiff Rashid previously informed Defendant Varlack on January 10, 2024 in OneNote "I was able to upload the video **I compiled** to Vimeo" Plaintiff Rashid therefore texted Defendant Varlack back as follows: "I did say I'll compile the footage for you when you originally asked. . . . The footage is all 1st hand accounts of people on the ground in Gaza."

190. On January 17, 2024, NYC Mayor Adams and various City Hall staffers attended a private screening put on by the IDF of video footage from the October 7, 2023 Hamas attack. The private event was hosted and run by the Consul General of Israel.

191. This event was a private invite-only event, and no Muslim City Hall employees were invited. NYC Mayor Adams' administration discriminated against Muslim City Hall

employees by intentionally excluding Muslim City Hall employees from this event.

192. On January 18, 2024, Defendant Varlack spoke to Plaintiff Rashid about the footage from Gaza she previously assigned Plaintiff Rashid to compile. Defendant Varlack wanted to make sure all the footage was verified and announced that she "wanted to ensure we are not accused of having an agenda."

193. Plaintiff Rashid asked Defendant Varlack if she was able to verify everything in the IDF video footage shown to NYC Mayor Adams the day prior. Defendant Varlack replied, "of course not."

194. Plaintiff Rashid then verbally complained to Defendant Varlack that NYC Mayor's Adams' administration had intentionally excluded and failed to invite any Muslim City Hall employees to view the IDF footage and therefore discriminated against Muslim City Hall employees.

195. Defendant Varlack did not respond to this complaint of discrimination.

196. Later on January 18, 2024, Plaintiff Rashid emailed the weekly group members as follows:

> I wanted to give a little more detail of where the footage comes from, all which is publicly available. The primary source material comes from news report analysis from CNN, New York Times, and CBS. Journalists reports on the ground and live reports are also included. Footage from rescue and hospital workers and Israeli soldiers are included. As [Defendant Varlack] mentioned on Tuesday, the idea is to have this available next week. Please let me know if you have any questions.

197. On January 22, 2024 Defendant Varlack instructed Plaintiff Rashid to email the weekly group members with a link to the Gaza footage she compiled for NYC Mayor Adams to view.

198. Plaintiff Rashid therefore sent a January 22, 2024 email that provided a link to the footage she compiled and provided the weekly group with over a month to review the footage

and raise any concerns before the scheduled February 28, 2024 screening.  No one in the weekly group raised any concerns regarding the Gaza footage Plaintiff Rashid circulated prior to the screening.

199.    On January 22, 2024, Plaintiff also provided Defendant Varlack with a link to the final draft of the Gaza footage via the OneNote system.

200.    The screening of Gaza footage for NYC Mayor Adams was scheduled by the NYC Mayor Adams' administration for February 28, 2024 at 1 p.m.

201.    On February 28, 2024, Defendant Varlack hastily convened a morning meeting with Plaintiff Rashid before the scheduled 1 p.m. screening of Gaza footage.

202.    Defendant Varlack opened the meeting by announcing, <u>for the first time</u>, that Ms. Alexander, the Deputy Chief Administrative Officer, had conducted an audit and incorrectly determined that Plaintiff Rashid was inputting more time on her timesheet than she had worked.

203.    Plaintiff Rashid immediately and strongly pushed back, steadfastly denying timesheet manipulation.

204.    Defendant Varlack did not provide any evidence in support of the false allegation that Plaintiff Rashid was manipulating her timesheet.

205.    Plaintiff Rashid did not manipulate her timesheets and Defendants do not have any evidence to support their false allegation that Plaintiff Rashid manipulated her timesheets.

206.    Instead, Defendant Varlack quickly pivoted the conversation and said, <u>for the first time</u>, that there was not sufficient work to keep Plaintiff Rashid occupied in the NYC Mayor's Office.  This was the first time Defendants told Plaintiff Rashid that she was no longer being promoted to a policy focused position in the NYC Mayor's Office.

207. Defendant Varlack's statement was plainly false because Defendant Varlack's Chief of Staff Office was incredibly busy, and Defendants had taken numerous steps to promote Plaintiff Rashid to a policy focused role up to five days before Plaintiff Rashid identified herself as Palestinian and complained of discrimination on October 25, 2023.

208. Defendant Varlack closed the February 28, 2024 meeting by stating her intention to demote Plaintiff Rashid to the Office for Asylum Seekers because **"there is not a continued match"** for Plaintiff Rashid in the Chief of Staff Office **"based on what's going on the last few months."**

209. Conspicuously, the "last few months" Plaintiff Rashid had identified herself as Palestinian, blew the whistle on Mr. Bahi's discriminatory "anti-Gaza" edict issued to only Muslim City Hall employees, and lodged numerous complaints of discrimination.

210. Defendant Varlack's demonstrably false and pretextual explanations for why Defendants were demoting Plaintiff Rashid (alleged timesheet manipulation and lack of work) sought to hide from the fact that Defendants demoted Plaintiff Rashid because she lodged numerous protected complaints and because she is Palestinian/Muslim.

211. Later that afternoon, Plaintiff Rashid presented the compiled Gaza footage to NYC Mayor Adams. Prior to the screening Plaintiff Rashid stood up and told the attendees that she is Palestinian and has family living in the West Bank.

212. Plaintiff Rashid then played the exact video footage that she had circulated to the weekly group and Defendant Varlack on January 22, 2024.

213. At the conclusion of the screening, Plaintiff Rashid stood visibly crying and thanked the attendees for coming. Shockingly, Mr. Shapiro, NYC Mayor Adams' Deputy Chief

of Staff and Senior Advisor, loudly commented **"oh shut up already"** while Plaintiff Rashid was offering closing remarks.

214. On February 29, 2024, Defendant Varlack hastily convened a meeting with Plaintiff Rashid and Ms. Maro. Defendant Varlack announced at this meeting that someone had lodged a complaint about the Gaza screening and explained that Plaintiff Rashid was accused of adding a slide to the presentation that was not included in the proposed video sent to the weekly group a month prior.

215. Defendant Varlack then announced that she "did not like surprises" and "was not aware" that Plaintiff Rashid would speak to the group before the screening.

216. In response, Plaintiff Rashid unequivocally denied adding a slide and stated, "everything that was presented yesterday was the exact same thing that I had given everybody weeks ago."

217. Ms. Rezek then entered the meeting and confirmed the video screened on February 28, 2024 was the same video circulated a month earlier. Ms. Rezek specifically commented that the picture in question "was in the video from when you sent it to the group to watch it ahead of time" – thereby pointing out that Defendant's Varlack's allegation was false.

218. Defendant Varlack completely ignored Ms. Rezek, however, and continued to falsely accuse Plaintiff Rashid of misleading her and using debunked footage.

219. In or about early March 2024, Plaintiff Rashid learned that the City Hall Human Resources Department had been told to launch an investigation into whether Plaintiff Rashid was (i) falsifying her timesheets; (ii) absent from her desk; and (iii) failing to complete tasks.

220.    All these accusations against Plaintiff Rashid are demonstrably false, and the City Hall Human Resources Department investigation did not uncover any evidence to support these false accusations.

221.    The sudden City Hall Human Resources Department investigation into demonstrably false accusations demonstrates that an unlawful conspiracy was underway to remove Plaintiff Rashid from City Hall because she is Palestinian/Muslim and because she repeatedly complained of ongoing discrimination.

222.    On March 28, 2024, Defendant NYC formally notified Plaintiff Rashid that she was being demoted to a position within the NYC Office for Asylum Seekers and provided Plaintiff Rashid with the NYC HRA Job ID # 612027, but no job description.

223.    This was the first time Defendant NYC notified Plaintiff Rashid what position she was being demoted into against her will.  Defendant NYC did not include Plaintiff Rashid in any discussions regarding her demotion despite assurances from Defendant Varlack that Plaintiff Rashid's input would be considered.

224.    On March 29, 2024, Plaintiff Rashid contacted both Defendant NYC's Human Resources Administration ("HRA") and the NYC Office for Asylum Seekers to request the missing job description and learned the demotion selected for Plaintiff Rashid had two very different job descriptions.

225.    The job description provided to Plaintiff Rashid by NYC HRA is a high-level senior position tasked with negotiating contracts, analyzing business needs, developing strategic business solutions, and monitoring supplier performance to name a few responsibilities.

226.    The job description provided by the NYC HRA in March 2024 lists numerous high-level tasks including the following:

- "**Lead projects**, attends meetings, develops scopes of work, requests for proposals and other solicitation documents."

- "Develop and implement effective/strategic business solutions through research and analysis of data and business processes."

- "Strong sense of **ownership** and able to **work independently**."

- "**Develop and manage** best practices within the category/industry."

- "Strategically **negotiate contracts** to reduce overall cost that is in the best interest of patients and organization."

227. In contrast, the job description provided to Plaintiff Rashid by the NYC Office of Asylum Seekers which would control and determine Plaintiff Rashid's new demotion and responsibilities, was a rudimentary scheduler role.

228. On March 29, 2024, Plaintiff Rashid called Molly Schaeffer ("Ms. Schaeffer"), the Director of the NYC Office of Asylum Seekers, to get clarity on the differing job descriptions for the same position.

229. Ms. Schaeffer explained to Plaintiff Rashid that the role was revised to have predominantly scheduling responsibilities and that Defendant Varlack had assured Ms. Schaeffer that Plaintiff Rashid was aware of the demotion to this scheduling position and was ok with a substantial demotion to a purely administrative role.

230. Defendant Varlack's assertion to Ms. Schaeffer was blatantly false. Plaintiff Rashid opposed the demotion and had no prior knowledge of the revised job description for Job ID # 612027 that made the position a purely administrative role.

231. Defendant Varlack not only demoted Plaintiff Rashid against her will, she also unlawfully manipulated the NYC Office of Asylum Seekers to reduce Plaintiff Rashid's duties and responsibilities to a purely administrative role.

232. Defendant Varlack intentionally manipulated the process to make sure that Plaintiff Rashid's new role was a demotion regarding duties, responsibilities, prestige, and career opportunities.

233. On April 1, 2024, Defendant NYC submitted formal paperwork to demote Plaintiff Rashid.

234. Plaintiff Rashid went from providing high-level logistical coordination for the NYC Mayor's Chief of Staff to placing items on a calendar for a NYC agency outside of City Hall in a manner of months.

235. Defendants' decision to demote Plaintiff Rashid constituted unlawful discrimination and retaliation. Defendants demoted Plaintiff Rashid from a prestigious position in City Hall to a purely administrative scheduling position in the NYC Office of Asylum Seekers.

236. Pursuant to City Hall policy and practice, Defendant Varlack and NYC Mayor Adams jointly aligned and jointly decided to demote Plaintiff Rashid in accordance with NYC Mayor Adams' stated anti-Palestinian and anti-Muslim rhetoric, policy positions, goals and objectives.

237. Plaintiff Rashid's new role did not allow for the extreme career growth she experienced in City Hall prior to October 25, 2023.

238. Further damaging Plaintiff Rashid, her scheduled pay raise granted under NYC Mayor Adams and Defendant NYC's retroactive pay increase agreement was canceled for

Plaintiff Rashid due to Defendants' forced discriminatory/retaliatory demotion of Plaintiff Rashid.

239. Plaintiff Rashid's salary in the new position after her demotion was $90,000 even though the posted salary range for her new position was potentially $120,000.

240. It is common for an employee with more than two years of Defendant NYC government employment experience (such as Plaintiff Rashid) to receive the higher end of the posted salary range when transitioning into a new role. In contrast, new hires typically receive the low end of the salary range.

241. Ignoring common practice, Defendant NYC tersely informed Plaintiff Rashid that "there is no room for negotiation on the salary provided."

242. On April 1, 2024, Defendant NYC gave Plaintiff Rashid three (3) days to accept her forced demotion and begin work in her new position. If Plaintiff Rashid did not report to her new demoted position, she would lose her employment within Defendant NYC's government.

243. To maintain her employment with Defendant NYC, Plaintiff Rashid reported to her new position in the NYC Office of Asylum Seekers.

244. Plaintiff Rashid's demotion adversely altered the terms and conditions of Plaintiff Rashid's employment with Defendant NYC in numerous materially negative ways.

245. Working face-to-face with NYC Mayor Adams and Defendant Varlack in City Hall on a daily basis was materially more prestigious than being relegated to a rudimentary scheduler role buried in city government.

246. Plaintiff Rashid's duties and responsibilities as Special Assistant were materially more prestigious than the duties she assumed after her demotion. For example, after Plaintiff

Rashid's demotion, her main function was to "[p]rovide scheduling support for Office leadership[.]"

247. Plaintiff Rashid has a B.A. in Political Science from Hunter College and a M.A. in Public Administration from Brooklyn College; therefore, the Special Assistant position she used to hold, and the promotion Defendant Varlack promised in May 2023 and started implementing in October 2023, were well suited to Plaintiff Rashid's skills and expertise, and set Plaintiff Rashid up for continued career advancement.

248. In contrast, the rudimentary scheduler position Plaintiff Rashid was demoted into was materially less suited to her skills and expertise and represented a major career step backward.

249. If Plaintiff Rashid had stayed in her former role, she would have been eligible for numerous retroactive pay increases[2] that would place her current salary at $101,000. Instead, she was demoted into a position that was not eligible for numerous retroactive pay increases and Plaintiff Rashid's demotion has resulted in a dramatically lower salary.

250. As a result of the Defendants' unlawful actions, Plaintiff Rashid has suffered significant emotional distress, including insomnia, extreme anxiety, and depression. Plaintiff Rashid's significant emotional distress also manifested in physical sickness that required numerous urgent care visits.

**Defendants' Continued Discrimination and Retaliation Against Plaintiff Rashid**

251. On April 4, 2024, three days after Defendant NYC issued formal paperwork to demote Plaintiff Rashid out of City Hall, active duty IDF soldiers that served in Gaza during the

[2] *See* Adams Plans to Give NYC Bureaucrats $2.1B Raise As He Pushes Program Cuts Over Migrants Crisis, New York Post, https://nypost.com/2024/04/13/us-news/nyc-managers-score-16-salary-hike-as-adams-pushes-program-cuts/ (last visited May 24, 2026).

current Israel-Hamas conflict were welcomed into City Hall to meet personally with NYC Mayor Adams.

252. Defendant Varlack intentionally did not notify the weekly group this would occur because she did not want the lone Palestinian in the group, Plaintiff Rashid, to object to the IDF meeting.

253. The IDF meeting was raised on the rapid response email chain (without Plaintiff Rashid receiving an email) and it was decided that "the timing on this seems extraordinary poor" and therefore NYC Mayor Adams' office "did not include on the public schedule" and "would not post anything" on social media about the meeting with active duty IDF soldiers at City Hall.

254. Plaintiff Rashid worked in the City Hall building on April 4, 2024, and only learned of the IDF soldiers in City Hall from social media. Plaintiff Rashid was terrified to leave City Hall on April 4, 2024 for fear of encountering the IDF soldiers.

255. In summer 2024, Plaintiff Rashid learned that she was replaced in Defendant Varlack's office by Jalen Miller ("Mr. Miller"). Mr. Miller is not Palestinian, is a recent college graduate, and has significantly less career experience than Plaintiff Rashid. Mr. Miller's prior work experience was almost entirely temporary internship positions.

256. Defendant Varlack hired Mr. Miller into the role of "Policy Analyst to the Chief of Staff" – the exact position Defendant Varlack told Plaintiff Rashid she would be promoted to back in May 2023 and that Mr. Maro was working to promote Plaintiff Rashid into five days before she identified herself as Palestinian and complained of discrimination.

257. Defendants intentionally did not post the "Policy Analyst to the Chief of Staff" position, in violation of Defendants' internal job posting policies and practices, and thereby intentionally precluded Plaintiff Rashid from applying for this position.

258. Defendants' decision to hire Mr. Miller demonstrated that there was enough work for Plaintiff Rashid in the Chief of Staff Office and Defendant Varlack's false claim that there was not enough work in her office was a pretextual rationale for Plaintiff Rashid's demotion.

259. Defendant Varlack made the discriminatory/retaliatory decision to remove Plaintiff Rashid (a Palestinian/Muslim who made legally protected complaints) and give the work and position to a non-Palestinian that would not question City Hall's anti-Palestinian and anti-Muslim rhetoric and edicts.

260. On September 6, 2024, Plaintiff Rashid filed EEOC Charge No. 520-2024-07900.

261. On October 6, 2024. Defendant Varlack finally added Plaintiff Rashid and Ms. Rezek to the rapid response email thread.

262. Defendants' decision to add Plaintiff Rashid and Ms. Rezek to the rapid response email thread was a direct result of the allegations of unlawful discrimination and retaliation set forth in Plaintiff Rashid's EEOC Charge No. 520-2024-07900.

263. Defendant NYC received a copy of EEOC Charge No. 520-2024-07900 and realized the blatantly discriminatory exclusion of Plaintiff Rashid and Ms. Rezek had to be rectified.

264. Defendants' decision to about face and immediately add Plaintiff Rashid and Ms. Rezek to the rapid response email thread immediately after receiving Plaintiff Rashid's EEOC Charge serves as an admission by Defendants that Plaintiff Rashid's prior exclusion from the rapid response email chain constituted unlawful discrimination.

265. On October 8, 2024, Mr. Bahi was arrested and charged with Witness Tampering and Destruction of Records by the United States Attorney's Office for the Southern District of New York. See United State of America v. Mohamed Bahi, 25-CR-00358 (S.D.N.Y.).

266. As set forth above, Mr. Bahi discriminatorily intimated, threatened and corruptly silenced the Muslim employees in NYC City Hall.  Federal prosecutors alleged in their Sealed Complaint against Mr. Bahi that he committed remarkably similar unlawful actions in the criminal context.  See id. at Doc. 1, Sealed Complaint.

267. Mr. Bahi's federal indictment is further proof of Mr. Bahi's pattern and practice of unlawful behavior on behalf of Defendant NYC in violation of Title VII, NYSHRL, NYCHRL and the federal criminal code.

268. On December 16, 2024, Moshe Davis ("Mr. Davis"), who was then the Senior Jewish Liaison in the NYC Mayor Adams' Office of Community Affairs, attended the weekly meeting and stated unequivocally that individuals that protested the state of Israel "are Hamas."

269. Later that day, Plaintiff Rashid, Mr. Hassan and Ms. Rezek jointly sent Defendant Varlack an email that relayed Mr. Davis' comments and stated as follows: "There is no creditable evidence that members of Hamas are protesting in Columbia or any other college campus in New York City.  As public servants within Mayor Adams admin, Moshe's ideology of conflating constitutionally protected rights to criticize a foreign government with a membership or support of a US designated terrorist entity violates the public's trust and only increases the continued distrust in our administration's ability to represent all New Yorkers fairly and equally."

270. Defendant Varlack ignored this email complaint and never responded to Plaintiff Rashid, Mr. Hassan and Mr. Rezek.

271. In or about the week of February 24 – 28, 2025, the NYC Mayor's Office posted an open position titled "Policy Advisor" with the Job ID # 45894.  This Policy Advisor position would directly support Defendant Varlack by performing the following functions: Research &

Analysis, Project Management, Internal/External Stakeholder Communication, and General Support.

272. The Policy Advisor position posted in February 2025 was completely in line with the position that Defendant Varlack promised to promote Plaintiff Rashid into and the Policy Advisor promotion for Plaintiff Rashid that Ms. Maro submitted to the Mayor's Office Manager system on October 20, 2023.

273. Defendant NYC's posted Policy Advisor position further demonstrated that there was plenty of work to be done in Defendant Varlack's Chief of Staff office. In fact, the exact type of position that Defendant Varlack promised to promote Plaintiff Rashid into was posted in February 2025 as an open position.

274. On March 3, 2025, Plaintiff Rashid applied for the posted "Policy Advisor" position by submitting a cover letter and resume electronically to the NYC Mayor's Office Recruitment system.

275. Plaintiff Rashid was well qualified for the posted "Policy Advisor" position and Defendant NYC should have placed Plaintiff Rashid in this open position.

276. Instead, the NYC Mayor's Office never responded to Plaintiff Rashid's application because Plaintiff Rashid is Palestinian/Muslim and because she lodged legally protected complaints.

277. On May 13, 2025, Mayor Adams announced that Mr. Davis was promoted to Executive Director of NYC Mayor Adams' newly created Office to Combat Antisemitism. Mayor Adams promoted Mr. Davis after his discriminatory comment that labeled all protestors as "Hamas" and despite Plaintiff Rashid, Mr. Hassan and Ms. Rezek's complaint to Defendant Varlack.

278. On or about May 16, 2025, an interview aired between NYC Mayor Adams and Dr. Phil McGraw of the Dr. Phil show. During that interview, Mayor Adams strongly condemned a group he called "Gays for Hamas." After this interview, Mayor Adams continued to repeatedly and publicly condemn "Gays for Hamas."

279. NYC Mayor Adams was questioned by reporters about these comments and in response Ms. Mamelak, the City Hall Press Secretary, stated that NYC Mayor Adams had been referring to a group called "Queers for Palestine." Ms. Mamelak later denied making this correction, despite audio memorializing her prior comments. Ms. Mamelak's denial demonstrates that NYC Mayor Adams' administration ultimately did not want to make a distinction between "Palestine" and "Hamas."

280. NYC Mayor Adams' comments on Dr. Phil, combined with Ms. Mamelak's explanation, clearly demonstrate that NYC Mayor Adams negatively identifies all Palestinians/Palestine as Hamas and therefore condemns all Palestinians/Palestine for Hamas' actions.

281. On or about July 4, 2025, NYC Immigrant Affairs Assistant Commissioner Erick Salgado ("Mr. Salgado") posted online that "enemies of the Church are preparing to elect an Ultra Socialist Mayor with a faith totally opposed to our[]" Christian faith.

282. Mr. Salgado was a member of NYC Mayor Adams' administration and his post falsely claimed that the Muslim faith of current NYC Mayor Zohran Mamdani was opposed to Christianity and that Muslims are the enemy of Christians.

283. On July 7, 2025, Plaintiff Rashid complained to Defendant Varlack that Mr. Salgado's anti-Muslim online post was yet another Islamophobic public statement issued by NYC Mayor Adams' administration.

284. In response, Defendant Varlack told Plaintiff Rashid that Mr. Salgado has "freedom of speech." NYC Mayor Adams did not condemn Mr. Salgado's anti-Muslim post and Defendant NYC did not take any corrective or disciplinary action against Mr. Salgado.

285. This incident demonstrates that Mr. Salgado's anti-Muslim discriminatory statements had the full approval and support of NYC Mayor Adams' administration.

286. In summer 2025, Defendant NYC closed the NYC Office of Asylum seekers due to the end of the migrant crisis in NYC.

287. On July 21, 2025, Defendant NYC transferred Plaintiff Rashid into a communications role with the NYC Department of Social Services.

288. Plaintiff Rashid's current role in the NYC Department of Social Services has no relation to the prestigious policy focused position in the NYC Mayor's Office she was supposed to obtain, and her salary remains substantially lower than it would have been without a demotion.

289. Plaintiff Rashid's demotion adversely altered the terms and conditions of her employment in numerous materially negative ways that still adversely impact her. Plaintiff Rashid's career never recovered from her unlawful demotion.

290. In November 2025, NYC Mayor Adams traveled to Israel on a NYC taxpayer funded trip. During that trip, NYC Mayor Adams stated publicly to Israelis as follows: "I wanted to come back here to Israel and let you know that I served you as Mayor."[3]

291. NYC Mayor Adams' trip to Israel and statement to Israelis demonstrates his administration's motivation to openly discriminate against Plaintiff Rashid because she is Palestinian/Muslim and to retaliate against Plaintiff Rashid because she lodged legally protected complaints.

---

[3] See New York City Mayor Eric Adams tell Israelis in Jerusalem: 'I served you as mayor,' Middle East Eye, https://www.middleeasteye.net/trending/eric-adams-tells-israelis-jerusalem-i-served-you-as-mayor (last visited May 23, 2026)

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
**Violation of Title VII**
**Religion Discrimination**
***Against Defendant NYC***

292. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

293. Title VII provides that "it shall be an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . or national origin" or "to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion . . . or national origin." 42 U.S.C. § 2000e-2(a).

294. Defendant NYC is an employer under Title VII.

295. Plaintiff Rashid is Muslim and therefore belongs to a protected class under Title VII.

296. Plaintiff Rashid was qualified for her position as Special Assistant to the NYC Mayor's Chief of Staff in the NYC Mayor's Office.

297. Plaintiff Rashid was qualified for the policy focused position in the NYC Mayor's Office that Defendant NYC was in the process of promoting Plaintiff Rashid into on October 20, 2023.

298. Plaintiff Rashid experienced numerous adverse employment actions during her career with Defendant NYC as set forth in this Verified Complaint.

299. Plaintiff Rashid experienced an adverse employment action when Defendant

NYC canceled Plaintiff Rashid's promotion to a substantial policy position in the NYC Mayor's Office.

300.    Plaintiff Rashid experienced an adverse employment action when Defendant NYC launched an unfounded Human Resources investigation into Plaintiff Rashid's unblemished and exemplary service in City Hall to ruin her career.

301.    Plaintiff Rashid experienced an adverse employment action when Defendant NYC directed only Muslim City Hall employees (including Plaintiff Rashid) to refrain from discussing Palestinian rights or the situation in Gaza and threatened only Muslim City Hall employees (including Plaintiff Rashid) that they would be terminated if they ignored Defendant NYC's anti-Palestinian and anti-Gaza edict.

302.    Plaintiff Rashid experienced an adverse employment action when Defendant NYC demoted Plaintiff Rashid out of her prestigious City Hall position into a rudimentary and insignificant scheduling position buried deep in city government.

303.    Plaintiff Rashid experience an adverse employment action when Defendant NYC did not hire her for the open "Policy Advisor" position posted in February 2025.

304.    As set forth in this Verified Complaint, the adverse employment actions Plaintiff Rashid experienced all occurred under circumstances that demonstrate they constitute discrimination because of Plaintiff Rashid's Muslim religion.

305.    As set forth in this Verified Complaint, Defendant NYC provided false rationales for the adverse employment actions Plaintiff Rashid experienced that were pretext for Defendant NYC's discriminatory actions.

306.    As a direct and proximate result of Defendant NYC's violations of Title VII, Plaintiff Rashid has been injured as set forth herein.

307. Defendant NYC's conduct constitutes an ongoing and continuous violation of Title VII. Unless Defendant NYC is enjoined from further violations, Plaintiff Rashid will continue to suffer injuries for which there is no adequate remedy at law. Plaintiff Rashid will suffer irreparable harm in that she will continue to be discriminated against and denied the job opportunities and higher salary opportunities that have been adversely taken from her.

308. Plaintiff Rashid contends that Defendant NYC has failed and continues to fail to comply with applicable laws prohibiting religion discrimination in violation of Title VII.

309. Plaintiff Rashid is entitled to injunctive relief, declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of Title VII**
**National Origin Discrimination**
***Against Defendant NYC***

310. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

311. Plaintiff Rashid's national origin is Palestinian and therefore belongs to a protected class under Title VII.

312. Plaintiff Rashid was qualified for her position as Special Assistant and was qualified for the policy focused position Defendant NYC was in the process of promoting Plaintiff Rashid into.

313. Plaintiff Rashid experienced numerous adverse employment actions during her career with Defendant NYC as set forth in this Verified Complaint.

314. As set forth in this Verified Complaint, the adverse employment actions Plaintiff Rashid experienced all occurred under circumstances that demonstrate they constitute

discrimination because of Plaintiff Rashid's Palestinian national origin.

315. As set forth in this Verified Complaint, Defendant NYC provided false rationales for the adverse employment actions Plaintiff Rashid experienced that were pretext for Defendant NYC's discriminatory actions.

316. As a direct and proximate result of Defendant NYC's violations of Title VII, Plaintiff Rashid has been injured as set forth herein.

317. Defendant NYC's conduct constitutes an ongoing and continuous violation of Title VII. Unless Defendant NYC is enjoined from further violations, Plaintiff Rashid will continue to suffer injuries for which there is no adequate remedy at law. Plaintiff Rashid will suffer irreparable harm in that she will continue to be discriminated against and denied the job opportunities and higher salary opportunities that have been adversely taken from her.

318. Plaintiff Rashid contends that Defendant NYC has failed and continues to fail to comply with applicable laws prohibiting national origin discrimination in violation of Title VII.

319. Plaintiff Rashid is entitled to injunctive relief, declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

## THIRD CAUSE OF ACTION
**Violation of Title VII**
**Retaliation**
***Against Defendant NYC***

320. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

321. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter[.]" 42

U.S.C. § 2000e-3(a).

322. Plaintiff Rashid engaged in numerous protected activities under Title VII when she repeatedly complained to Defendant NYC of her co-workers' and supervisors' discriminatory actions and rhetoric.

323. Plaintiff Rashid's protected activities under Title VII include, but are not limited to, the following:

- Plaintiff Rashid's October 25, 2023 complaint to NYC Mayor Adams.
- Plaintiff Rashid's October 26, 2023 complaint to Defendant Varlack.
- Plaintiff Rashid's December 28, 2023 complaint to Defendant Varlack.
- Plaintiff Rashid's January 2, 2024 complaint to Defendant Varlack.
- Plaintiff Rashid's January 4, 2024 complaint to Mr. Kreizman.
- Plaintiff Rashid's January 12, 2024 complaint to Defendant Varlack.

324. Defendant NYC was aware of Plaintiff Rashid's protected activities under Title VII.

325. Plaintiff Rashid experienced numerous adverse employment actions during her career with Defendant NYC as set forth in this Verified Complaint.

326. As set forth in this Verified Complaint, there is a causal connection between Plaintiff Rashid's protected activities and the adverse employment actions Plaintiff Rashid experienced.

327. As set forth in this Verified Complaint, Defendant NYC provided false rationales for the adverse employment actions Plaintiff Rashid experienced that were pretext for Defendant NYC's retaliatory actions.

328. As a direct and proximate result of Defendant NYC's violations of Title VII,

Plaintiff Rashid has been injured as set forth herein.

329. Defendant NYC's conduct constitutes an ongoing and continuous violation of Title VII. Unless Defendant NYC is enjoined from further violations, Plaintiff Rashid will continue to suffer injuries for which there is no adequate remedy at law. Plaintiff Rashid will suffer irreparable harm in that she will continue to be retaliated against and denied the job opportunities and higher salary opportunities that have been adversely taken from her.

330. Plaintiff Rashid contends that Defendant NYC has failed and continues to fail to comply with applicable laws prohibiting retaliation in violation of Title VII.

331. Plaintiff Rashid is entitled to injunctive relief, declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

**FOURTH CAUSE OF ACTION**
**Violation of Title VII**
**Hostile Work Environment (Religion)**
***Against Defendant NYC***

332. Plaintiff Rashid re-alleges and incorporate herein all previously alleged paragraphs in this Verified Complaint.

333. By the acts and omissions described in this Verified Complaint, Defendant NYC's conduct created a hostile work environment in violation of Title VII.

334. The religion harassment and discrimination described in this Verified Complaint was sufficiently severe and pervasive to alter the conditions of Plaintiff Rashid's employment and create an abusive working environment.

335. As set forth in this Verified Complaint, Plaintiff Rashid was subjected to the religion harassment and discrimination because she is Muslim.

336. Plaintiff Rashid's supervisors, including but not limited to Defendant Varlack and

NYC Mayor Adams, witnessed and participated in the religion harassment and discrimination for months and did nothing to stop it, thereby demonstrating a specific basis for imputing the hostile work environment on Defendant NYC.

337. As a direct and proximate result of Defendant NYC's violations of Title VII, Plaintiff Rashid has been injured as set forth herein.

338. Plaintiff Rashid is entitled to declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

**FIFTH CAUSE OF ACTION**
**Violation of Title VII**
**Hostile Work Environment (National Origin)**
***Against Defendant NYC***

339. Plaintiff Rashid re-alleges and incorporate herein all previously alleged paragraphs in this Verified Complaint.

340. By the acts and omissions described in this Verified Complaint, Defendant NYC's conduct created a hostile work environment in violation of Title VII.

341. The national origin harassment and discrimination described in this Verified Complaint was sufficiently severe and pervasive to alter the conditions of Plaintiff Rashid's employment and create an abusive working environment.

342. As set forth in this Verified Complaint, Plaintiff Rashid was subjected to the national origin harassment and discrimination because she is Palestinian.

343. Plaintiff Rashid's supervisors, including but not limited to Defendant Varlack and NYC Mayor Adams, witnessed and participated in the national origin harassment and discrimination for months and did nothing to stop it, thereby demonstrating a specific basis for imputing the hostile work environment on Defendant NYC.

344. As a direct and proximate result of Defendant NYC's violations of Title VII, Plaintiff Rashid has been injured as set forth herein.

345. Plaintiff Rashid is entitled to declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

**SIXTH CAUSE OF ACTION**
**Violation of NYCHRL**
**Religion Discrimination**
***Against All Defendants***

346. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

347. N.Y.C. Admin. Code § 8-107(1)(a) provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . creed . . . or national origin . . . of any person . . . [t]o refuse to hire or employ or to bar or to discharge from employment such person; or [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment."

348. Under the NYCHRL, individual employees such as Defendant Varlack may incur individual liability for their own discriminatory or retaliatory conduct and for aiding, abetting, inciting, compelling or coercing such conduct by others.

349. Defendant NYC is an employer under the NYCHRL.

350. Plaintiff Rashid is Muslim and therefore belongs to a protected class under the NYCHRL.

351. Plaintiff Rashid experienced repeated negative differential treatment during her career with Defendant NYC as set forth in this Verified Complaint.

352. As set forth in this Verified Complaint, the negative differential treatment that

Plaintiff Rashid experienced occurred because Defendants' discriminated against Plaintiff Rashid because of her Muslim religion.

353. As set forth in this Verified Complaint, Defendants provided false rationales for the negative differential treatment against Plaintiff Rashid that were pretext for Defendants' discriminatory actions.

354. As a direct and proximate result of Defendants' violations of the NYCHRL, Plaintiff Rashid has been injured as set forth herein.

355. Defendant Varlack committed, encouraged, condoned and approved the religion discrimination described in Plaintiff Rashid's Verified Complaint. Defendant Varlack also aided, abetted, incited, coerced and compelled the religion discrimination described in Plaintiff Rashid's Verified Complaint.

356. The violations at hand are particularly grave considering the uniquely remedial purpose behind the NYCHRL, which provides that each section must be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of either federal or New York State civil and human rights laws, including those laws with provisions comparably worded to provisions of the NYCHRL. N.Y.C. Admin. Code § 8-130.

357. Accordingly, Defendants' conduct is subject to much stricter standard under the NYCHRL than under state or federal law, and Defendants' liability under these provisions must be determined separately and independently from their liability under the provisions of either state or federal law.

358. Defendant NYC's conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendant NYC is enjoined from further violations, Plaintiff Rashid will continue to suffer injuries for which there is no adequate remedy at law. Plaintiff Rashid will

suffer irreparable harm in that she will continue to be discriminated against and denied the job opportunities and higher salary opportunities that have been adversely taken from her.

359. Plaintiff Rashid contends that Defendant NYC has failed and continues to fail to comply with applicable laws prohibiting religion discrimination in violation of the NYCHRL.

360. Defendants engaged in religion discrimination against Plaintiff Rashid with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

361. Plaintiff Rashid is entitled to injunctive relief, declaratory relief, compensatory damages (including emotional distress damages), punitive damages and reasonable attorney's fees and costs.

**SEVENTH CAUSE OF ACTION**
**Violation of the NYCHRL**
**National Origin Discrimination**
***Against All Defendants***

362. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

363. Plaintiff Rashid's national origin is Palestinian and therefore belongs to a protected class under the NYCHRL.

364. Plaintiff Rashid experienced repeated negative differential treatment during her career with Defendant NYC as set forth in this Verified Complaint.

365. As set forth in this Verified Complaint, the negative differential treatment that Plaintiff Rashid experienced occurred because Defendants discriminated against Plaintiff Rashid because of her Palestinian national origin.

366. As set forth in this Verified Complaint, Defendants provided false rationales for the negative differential treatment against Plaintiff Rashid that were pretext for Defendants'

discriminatory actions.

367. As a direct and proximate result of Defendants' violations of the NYCHRL, Plaintiff Rashid has been injured as set forth herein.

368. Defendant Varlack committed, encouraged, condoned and approved the national origin discrimination described in Plaintiff Rashid's Verified Complaint. Defendant Varlack also aided, abetted, incited, coerced and compelled the national origin discrimination described in Plaintiff Rashid's Verified Complaint.

369. Defendant NYC's conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendant NYC is enjoined from further violations, Plaintiff Rashid will continue to suffer injuries for which there is no adequate remedy at law. Plaintiff Rashid will suffer irreparable harm in that she will continue to be discriminated against and denied the job opportunities and higher salary opportunities that have been adversely taken from her.

370. Plaintiff Rashid contends that Defendant NYC has failed and continues to fail to comply with applicable laws prohibiting national origin discrimination in violation of the NYCHRL.

371. Defendants engaged in national origin discrimination against Plaintiff Rashid with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

372. Plaintiff Rashid is entitled to injunctive relief, declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

**EIGHTH CAUSE OF ACTION**
**Violation of the NYCHRL**
**Retaliation**
***Against All Defendants***

373.    Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

374.    N.Y.C. Admin. Code § 8-107(7) provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has . . . opposed any practice forbidden under this chapter[.]   The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment, . . . provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

375.    As set forth in this Verified Complaint, Plaintiff Rashid engaged in numerous protected activities under the NYCHRL when she repeatedly complained to Defendants of her co-workers' and supervisors' discriminatory actions and rhetoric.

376.    Defendants were aware of Plaintiff Rashid's protected activities under the NYCHRL.

377.    Plaintiff Rashid experienced repeated negative differential treatment during her career with Defendant NYC as set forth in this Verified Complaint.

378.    As set forth in this Verified Complaint, there is a causal connection between Plaintiff Rashid's protected activities and the repeated negative differential treatment Plaintiff Rashid experienced.

379.    As set forth in this Verified Complaint, Defendants provided false rationales for the adverse employment actions Plaintiff Rashid experienced that were pretext for Defendants' retaliatory actions.

380. As a direct and proximate result of Defendants' violations of the NYCHRL, Plaintiff Rashid has been injured as set forth herein.

381. Defendant Varlack committed, encouraged, condoned and approved the retaliation described in Plaintiff Rashid's Verified Complaint. Defendant Varlack also aided, abetted, incited, coerced and compelled the retaliation described in Plaintiff Rashid's Verified Complaint.

382. Defendant NYC's conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendant NYC is enjoined from further violations, Plaintiff Rashid will continue to suffer injuries for which there is no adequate remedy at law. Plaintiff Rashid will suffer irreparable harm in that she will continue to be retaliated against and denied the job opportunities and higher salary opportunities that have been adversely taken from her.

383. Plaintiff Rashid contends that Defendant NYC has failed and continues to fail to comply with applicable laws prohibiting retaliation in violation of the NYCHRL.

384. Defendants engaged in retaliation against Plaintiff Rashid with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

385. Plaintiff Rashid is entitled to injunctive relief, declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

## NINTH CAUSE OF ACTION
**Violation of the NYCHRL**
**Hostile Work Environment (Religion)**
***Against All Defendants***

386. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint

387. By the acts and omissions described in this Verified Complaint, Defendants' conduct created a hostile work environment in violation of NYCHRL.

388. The religion harassment and discrimination described in this Verified Complaint establishes that Plaintiff Rashid was treated less well than other employees because she is Muslim.

389. As set forth in this Verified Complaint, Plaintiff Rashid was subjected to the religion harassment and discrimination because she is Muslim.

390. As a direct and proximate result of Defendants' violations of NYCHRL, Plaintiff Rashid has been injured as set forth herein.

391. Defendants created, condoned and participated in a hostile work environment against Plaintiff Rashid with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

392. Plaintiff Rashid is entitled to declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

## TENTH CAUSE OF ACTION
**Violation of the NYCHRL**
**Hostile Work Environment (National Origin)**
***Against All Defendants***

393. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

394. By the acts and omissions described in this Verified Complaint, Defendants' conduct created a hostile work environment in violation of NYCHRL.

395. The national origin harassment and discrimination described in this Verified Complaint establishes that Plaintiff Rashid was treated less well than other employees because

she is Palestinian.

396. As set forth in this Verified Complaint, Plaintiff Rashid was subjected to the national origin harassment and discrimination because she is Palestinian.

397. As a direct and proximate result of Defendants' violations of NYCHRL, Plaintiff Rashid has been injured as set forth herein.

398. Defendants created, condoned and participated in a hostile work environment against Plaintiff Rashid with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

399. Plaintiff Rashid is entitled to declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

## ELEVENTH CAUSE OF ACTION
**Violation of the NYSHRL**
**Religion Discrimination**
***Against All Defendants***

400. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

401. The NYSHRL was enacted "to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life" by "eliminat[ing] and prevent[ing] discrimination in employment[.]" Executive Law § 290(3).

402. To accomplish these goals, the NYSHRL declares "[t]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . creed [or] national origin . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Executive Law § 296(1)(a).

403.    Under the NYSHRL, individual employees such as Defendant Varlack may incur individual liability for their own discriminatory or retaliatory conduct and for aiding, abetting, inciting, compelling or coercing such conduct by others.

404.    Plaintiff Rashid experienced numerous adverse employment actions during her career with Defendant NYC as set forth in this Verified Complaint.

405.    As set forth in this Verified Complaint, the adverse employment actions Plaintiff Rashid experience all occurred under circumstances that demonstrate that Defendants discriminated against Plaintiff Rashid because she is Muslim.

406.    As set forth in this Verified Complaint, Defendants provided false rationales for the adverse employment actions Plaintiff Rashid experienced that were pretext for Defendants' discriminatory actions.

407.    As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiff Rashid has been injured as set forth herein.

408.    Defendant NYC's conduct constitutes an ongoing and continuous violation of the NYSHRL.  Unless Defendant NYC is enjoined from further violations, Plaintiff Rashid will continue to suffer injuries for which there is no adequate remedy at law.  Plaintiff Rashid will suffer irreparable harm in that she will continue to be discriminated against and denied the job opportunities and higher salary opportunities that have been adversely taken from her.

409.    Plaintiff Rashid contends that Defendant NYC has failed and continues to fail to comply with applicable laws prohibiting religion discrimination in violation of the NYSHRL.

410.    Plaintiff Rashid is entitled to injunctive relief, declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

**<u>TWELFTH CAUSE OF ACTION</u>**
**Violation of the NYSHRL**
**National Origin Discrimination**
***Against All Defendants***

411. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

412. Plaintiff Rashid's national origin is Palestinian and therefore belongs to a protected class under the NYSHRL.

413. Plaintiff Rashid experienced numerous adverse employment actions during her career with Defendant NYC as set forth in this Verified Complaint.

414. As set forth in this Verified Complaint, the adverse employment actions Plaintiff Rashid experienced all occurred under circumstances that demonstrate Defendants discriminated against Plaintiff Rashid because of her Palestinian national origin.

415. As set forth in this Verified Complaint, Defendants provided false rationales for the adverse employment actions Plaintiff Rashid experienced that were pretext for Defendants' discriminatory actions.

416. As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiff Rashid has been injured as set forth herein.

417. Defendant NYC's conduct constitutes an ongoing and continuous violation of the NYSHRL. Unless Defendant NYC is enjoined from further violations, Plaintiff Rashid will continue to suffer injuries for which there is no adequate remedy at law. Plaintiff Rashid will suffer irreparable harm in that she will continue to be discriminated against and denied the job opportunities and higher salary opportunities that have been adversely taken from her.

418. Plaintiff Rashid contends that Defendant NYC has failed and continues to fail to comply with applicable laws prohibiting national origin discrimination in violation of the

NYSHRL.

419. Plaintiff Rashid is entitled to injunctive relief, declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

**THIRTEENTH CAUSE OF ACTION**
**Violation of NYSHRL**
**Retaliation**
***Against All Defendants***

420. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

421. The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article[.]" Executive Law § 296(7).

422. As set forth in this Verified Complaint, Plaintiff Rashid engaged in numerous protected activities under the NYSHRL when she repeatedly complained to Defendants of her co-workers' and supervisors' discriminatory actions and rhetoric.

423. Defendants were aware of Plaintiff Rashid's protected activities under the NYSHRL.

424. Plaintiff Rashid experienced numerous adverse employment actions during her career with Defendant NYC as set forth in this Verified Complaint.

425. As set forth in this Verified Complaint, there is a causal connection between Plaintiff Rashid's protected activities and the adverse employment actions Plaintiff Rashid experienced.

426. As set forth in this Verified Complaint, Defendants provided false rationales for

the adverse employment actions Plaintiff Rashid experienced that were pretext for Defendants' retaliatory actions.

427. As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiff Rashid has been injured as set forth herein.

428. Defendant NYC's conduct constitutes an ongoing and continuous violation of the NYSHRL. Unless Defendant NYC is enjoined from further violations, Plaintiff Rashid will continue to suffer injuries for which there is no adequate remedy at law. Plaintiff Rashid will suffer irreparable harm in that she will continue to be retaliated against and denied the job opportunities and higher salary opportunities that have been adversely taken from her.

429. Plaintiff Rashid contends that Defendant NYC has failed and continues to fail to comply with applicable laws prohibiting retaliation in violation of the NYSHRL.

430. Plaintiff Rashid is entitled to injunctive relief, declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

## FOURTEENTH CAUSE OF ACTION
**Violation of NYSHRL**
**Hostile Work Environment (Religion)**
***Against All Defendants***

431. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

432. By the acts and omissions described in this Verified Complaint, Defendants' conduct created a hostile work environment in violation of NYSHRL.

433. The religion harassment and discrimination described in this Verified Complaint was sufficiently severe and pervasive to alter the conditions of Plaintiff Rashid's employment and create an abusive working environment.

434. As set forth in this Verified Complaint, Plaintiff Rashid was subjected to the religion harassment and discrimination because she is Muslim.

435. Plaintiff Rashid's supervisors, including but not limited to Defendant Varlack and NYC Mayor Adams, witnessed and participated in the religion harassment and discrimination for months and did nothing to stop it, thereby demonstrating a specific basis for imputing the hostile work environment on Defendant NYC.

436. As a direct and proximate result of Defendants' violations of NYSHRL, Plaintiff Rashid has been injured as set forth herein.

437. Plaintiff Rashid is entitled to declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

**FIFTEENTH CAUSE OF ACTION**
**Violation of NYSHRL**
**Hostile Work Environment (National Origin)**
***Against All Defendants***

438. Plaintiff Rashid re-alleges and incorporates herein all previously alleged paragraphs in this Verified Complaint.

439. By the acts and omissions described in this Verified Complaint, Defendants' conduct created a hostile work environment in violation of NYSHRL.

440. The national origin harassment and discrimination described in this Verified Complaint was sufficiently severe and pervasive to alter the conditions of Plaintiff Rashid's employment and create an abusive working environment.

441. As set forth in this Verified Complaint, Plaintiff Rashid was subjected to the national origin harassment and discrimination because she is Palestinian.

442. Plaintiff Rashid's supervisors, including but not limited to Defendant Varlack and

NYC Mayor Adams, witnessed and participated in the national origin harassment and discrimination for months and did nothing to stop it, thereby demonstrating a specific basis for imputing the hostile work environment on Defendant NYC.

443.    As a direct and proximate result of Defendants' violations of NYSHRL, Plaintiff Rashid has been injured as set forth herein.

444.    Plaintiff Rashid is entitled to declaratory relief, compensatory damages (including emotional distress damages), backpay, punitive damages and reasonable attorney's fees and costs.

## JURY TRIAL

Plaintiff Rashid demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

FOR ALL OF THESE REASONS, Plaintiff Rashid respectfully asks this Court to order the following relief:

1.    Declaratory judgment declaring the Defendants' acts as challenged herein violated Plaintiff Rashid's rights as secured by Title VII, NYCHRL and NYSHRL.

2.    An order and judgment requiring Defendant NYC to promote Plaintiff Rashid to the substantial policy focused role in the NYC Mayor's Office that she was being promoted into on October 20, 2023.

3.    An order and judgment requiring Defendant NYC to raise Plaintiff Rashid's salary to the amount that it would have reached if not for Defendants' discriminatory and retaliatory demotion of Plaintiff Rashid.

4.    An award of backpay to Plaintiff Rashid in an amount to be determined at trial.

5.    An award of Plaintiff Rashid's reasonable attorney's fees and costs.

6. An award of Plaintiff Rashid's compensatory damages, including but not limited to, emotional distress damages, in an amount to be determined at trial but believed to exceed one million dollars.

7. An award of punitive damages to be awarded to Plaintiff Rashid in an amount to be determined at trial but believed to exceed one million dollars.

8. An award of Plaintiff Rashid's reasonable attorney's fees and costs.

9. An award of prejudgment interest to Plaintiff Rashid on all amounts due.

10. A civil penalty to be levied against the Defendants in accordance with the NYCHRL and the NYSHRL.

11. An award to Plaintiff Rashid such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful actions.

Respectfully,

Dated: May 25, 2026
New York, New York

**HOUSTON A STOKES, ESQ.**
Attorney for Plaintiff Hasibe Rashid

By: /s/ Houston A. Stokes
Houston A. Stokes, Esq.
**STOKES LAW PLLC**
**Church Street Station**
**P.O. Box 478**
**New York, NY 10008**
**Houston@HoustonStokesLaw.com**
**(773) 936-0722**

**VERIFICATION**

State of New York )
) Ss.:
County of Kings )

Hasibe Rashid, being duly sworn, deposes and says: I am the Plaintiff herein. I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, except as to those matters which are alleged on information and belief, and as to those matters, I believe them to be true.

HASIBE RASHID

SUBSCRIBED AND SWORN TO
Before me this 25TH day of May 2026

NOTARY PUBLIC

HOUSTON ADAMS STOKES
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02ST6342424
Qualified in Kings County
Commission Expires May 23, 2028